**MUSICK, PEELER & GARRETT LLP**
624 South Grand Avenue, Suite 2000
Los Angeles, California 90017-3383
Telephone (213) 629-7600
Facsimile (213) 624-1376

David A. Tartaglio (State Bar No. 117232)
 d.tartaglio@musickpeeler.com
Chad A. Westfall (State Bar No. 208968)
 c.westfall@musickpeeler.com

Attorneys for Plaintiff
RSUI INDEMNITY COMPANY

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA, WESTERN DIVISION

| | |
|---|---|
| RSUI INDEMNITY COMPANY,<br><br>  Plaintiff,<br><br>vs.<br><br>COMMUNITY HEALTH CENTERS OF THE CENTRAL COAST, INC., and DOES 1 - 10,<br><br>  Defendants. | Case No.<br><br>**COMPLAINT FOR DECLARATORY JUDGMENT** |

COMES NOW Plaintiff RSUI INDEMNITY COMPANY ("RSUI") and alleges as follows:

## NATURE OF THE ACTION

1. This is an insurance coverage dispute. Plaintiff seeks a declaration of its rights and obligations with respect to the defense and insemination of Defendant COMMUNITY HEALTH CENTERS OF THE CENTRAL COAST, INC. ("CHC") with respect to the joint investigation of the United States Attorney's Office for the Central District of California and the United States Department of Justice's Civil Division are conducting regarding CHC's alleged violations of the civil False Claims Act, 31 U.S.C. §§ 3729–3733 (the "FCA CLAIM").

2019930.2

COMPLAINT FOR DECLARATORY JUDGMENT

## THE PARTIES

2. Plaintiff RSUI is a corporation duly organized under the laws of the State of New Hampshire. At all times relevant to the instant complaint, RSUI was authorized to transact insurance business and transacting insurance business in the State of California.

3. RSUI is informed and believes and thereon alleges that Defendant CHC is a nonprofit public benefit corporation organized and existing under the laws of the State of California authorized to transact and transacting business in the State of California.

4. The true names and capacities, whether individual, corporate, associate or otherwise, of Defendants Does 1 through 10, inclusive, are unknown to Plaintiff RSUI who therefore sues those defendants by fictitious names. Plaintiff RSUI will amend this Complaint to show the true names and capacities of Does 1 through 10 when they have been ascertained.

## JURISDICTION, VENUE AND DIVISIONAL ASSIGNMENT

5. This Court has jurisdiction over this action under 28 U.S.C. § 1332 because it is a civil action between citizens of different states and the matter in controversy exceeds the sum of $75,000.

6. Venue is proper in this Court under 28 U.S.C. § 1391 (b) because the Central District includes Santa Barbara County, where CHC is located and on information and belief a substantial part of the events or omissions which give rise to the FCA CLAIM and CHC's claim for insurance coverage occurred.

## THE POLICY

7. RSUI issued a Non-Profit Organization Management Liability Policy No. NPP689059 to Insured Organization CHC for the policy period from September 1, 2020 to September 1, 2021 (the "POLICY"), which provided Directors and Officers Liability Insurance coverage. A copy of the POLICY is attached to this complaint as **Exhibit A**.

8. The POLICY's "Directors And Officers Liability Coverage Section (Non-Profit)" form provides in part:

> subject to the terms, conditions, definitions, exclusions and limitations provided hereinafter or in the Common Policy Terms and Conditions, the **Insurer** agrees:
>
> **SECTION I. - INSURING AGREEMENTS**
>
> **Directors and Officers Liability**
>
> \* \* \*
>
> C. With the **Insured Organization,** that if a **Claim** for a **Wrongful Act** is first made against the **Insured Organization** during the **Policy Period** and reported in accordance with SECTION V. – CONDITIONS, C. Notice of Claim or Circumstance in the Common Policy Terms and Conditions of this policy, the **Insurer** will pay on behalf of the **Insured Organization** all **Loss** the **Insured Organization** is legally obligated to pay.
>
> \* \* \*
>
> **SECTION III. - DEFINITIONS**
>
> **A. Claim**, either in the singular or the plural, means:
>
>    1. A written demand for monetary or non-monetary relief;
>
>    2. A civil, criminal, administrative, regulatory or arbitration proceeding, or arbitration demand for monetary or non-monetary relief which is commenced by:
>
>       a. Receipt or service of a complaint or similar pleading;
>
>       b. Return of an indictment or filing of information; or
>
>       c. Receipt of a notice of charges;
>
>    3. A written request to an **Insured** to toll or waive a statute of limitations regarding a potential **Claim**, commenced by the receipt of such request by the **Insured**.
>
> **C. Insured** means any **Insured Organization** and/or any **Insured Person**.
>
> \* \* \*
>
> **E. Loss** means damages, settlements, judgments (including pre- and post-judgment interest on a covered judgment) and **Defense Expenses**. **Loss** (other than **Defense Expenses**) shall not include:
>
>    1. Any amount for which the **Insureds** are not financially liable or for which there is not legal recourse to the **Insureds**;

2. Amounts owed under any contract, partnership, stock or other ownership agreement, or any other type of contract;

3. Disability, social security, workers compensation, medical insurance, retirement or pension benefit payments, or settlement amounts representing employment related benefit payments;

4. The cost of creating or reinstating employment;

5. Any amounts owed to any **Employee** as wages, compensation, severance or benefits previously incurred or vested without regard to any **Claim**;

6. Civil or criminal fines or penalties;

7. Taxes, whether owed to or by any **Insured**;

8. Amounts, including **Defense Expenses**, arising out of, based upon or attributable to actual or alleged liability or costs incurred by any **Insured** to modify any building or property in order to make such building or property more accessible or accommodating to any disabled person;

9. Matters that may be uninsurable under the law pursuant to which this policy shall be construed.

The DEFINITION of **Loss** shall include punitive or exemplary damages and the multiplied portion of any multiplied damage award, if and where insurable. For purposes of determining whether punitive or exemplary damages, or the multiplied portion of any multiplied damage award arising from any **Claim** shall be insurable by law, the Insurer agrees to abide by the law of whichever jurisdiction is applicable to such Claim and is most favorable to the Insured in that regard.

* * *

G. **Wrongful Act** means any actual or alleged act, error, omission, misstatement, misleading statement, neglect or breach of duty, or **Personal Injury Wrongful Act**, by:

1. An **Insured Person** while acting in his or her capacity as such and on behalf of the **Insured Organization** or any matter claimed against them solely by reason of their status as an **Insured Person**; or

2. The **Insured Organization**.

**SECTION IV. – EXCLUSIONS**

The **Insurer** shall not be liable to make any payment for **Loss** in connection with any **Claim** made against any **Insured**:

1. Based upon, arising out of or attributable to the gaining by any **Insured** of any profit or advantage to which such **Insured** was not legally entitled; provided, this EXCLUSION shall not apply unless a judgment or other final adjudication adverse to such **Insured** establishes that the **Insured** gained such profit or advantage;

2. Based upon, arising out of, directly or indirectly resulting from or in consequence of, or in any way involving any criminal or deliberate fraudulent act; provided, this EXCLUSION shall not apply unless a judgment or other final adjudication adverse to any **Insured** in the **Claim** shall establish that such **Insured** committed such criminal or fraudulent act;

3. Alleging, arising out of, based upon or attributable to, in whole or in part, any liability under or pursuant to any contract or agreement, whether oral, written, express or implied, including the liability of others assumed by an **Insured**, unless such **Insured** would have been liable in the absence of such contract or agreement;

9. The POLICY's "Common Policy Terms And Conditions Coverage Section (Non-Profit)" form provides in part:

**SECTION III. - DEFINITIONS**

* * *

**D. Defense Expenses** means reasonable and necessary legal fees and expenses incurred, with the **Insurer's** consent, by any **Insured** in defense of a **Claim**, including any appeal therefrom. **Defense Expenses**, however, shall not include:

1. Remuneration, overhead or benefit expenses associated with any **Insured Person**; or

2. Any obligation to apply for or furnish any appellate or similar bond.

* * *

**SECTION V. - CONDITIONS**

**A. Duty to Defend**

It shall be the right and duty of the **Insurer** to defend any **Claim** against any **Insured** for which coverage applies under this policy, and the **Insurer** shall have the right to appoint counsel of its choosing. No **Insured** may incur any **Defense Expenses**, admit liability for or settle any **Claim** or negotiate any settlement without the **Insurer's** prior written consent; such consent not to be unreasonably withheld. Any **Defense Expenses** incurred or settlements made without the prior written consent of the **Insurer** will not be covered under this policy. The **Insurer** shall have the right to appoint counsel, investigate and conduct negotiations and, with the consent of the **Insured**, to enter into the settlement of any **Claim** that the **Insurer** deems appropriate. If the **Insured** refuses to consent to a settlement acceptable to the claimant in accordance with the **Insurer's** recommendations, the **Insurer's** liability for all **Loss** on account of such **Claim** shall not exceed:

1. The amount for which the **Insurer** could have settled such **Claim** plus **Defense Expenses** incurred as of the date such settlement was proposed in writing by the **Insurer** ("Settlement Opportunity Amount"); plus

2. Seventy percent (70%) of covered **Loss** in excess of such Settlement

> Opportunity Amount subject to the policy's Limit of Liability.
>
> In no event shall the **Insurer** be liable under this policy for more than the Limit of Liability shown in Item 4. of the Common Policy Declarations Page.
>
> **D. Cooperation**
>
> In the event of a **Claim** or notice of circumstances under SECTION V. - CONDITIONS, C. Notice of Claim or Circumstance of this policy, the **Insured** will provide the **Insurer** with all information, assistance and cooperation that the **Insurer** reasonably requests, and will take no action, without the **Insurer's** prior written consent, that might prejudice the **Insured's** or the **Insurer's** position, potential or actual rights, or defense under this policy.
>
> \* \* \*
>
> **P. Governing Law Clause**
>
> This policy shall, to the extent permitted by applicable law, be construed in accordance with the laws of the state or jurisdiction of incorporation or organization of the **Insured Organization** shown in Item 1. of the Declarations Page or, in the case of matters pertaining to a **Subsidiary**, the laws of the state or jurisdiction of incorporation or organization thereof.

10. The POLICY's "Coverage Extension – Health Care Organization" form provides in part:

> **4. Government Funding Defense Expense Coverage**
>
> **Loss** shall not include the return of funds which were received from any federal, state or local governmental agency; provided, however, that with respect to any **Claim** arising out of the return or request to return, such funds, and subject to a Retention amount of $1,000,000 the **Insurer** shall pay **Defense Expenses** up to a total of $1,000,000 incurred by the Insured on a fifty percent (50%) coinsurance basis, with fifty percent (50%) of such **Defense Expenses** to be borne by the Insured and to remain uninsured; and the remaining fifty percent (50%) of such **Defense Expenses** to be covered by the **Insurer** subject to all other terms, conditions and exclusions of this policy.
>
> Notwithstanding anything contained in this endorsement to the contrary, however, solely where coverage for any **Claim** is triggered as "Side A", or non-indemnifiable or non-indemnified **Loss** in keeping with Policy terms and conditions, the Retention normally applicable in such situations shall apply to such **Claim**, and the Retention stated here shall not apply.

## THE FCA CLAIM

11. On information and belief, the United States Department of Justice ("DOJ") advised CHC on August 19, 2021 by telephone that it was demanding

payment from CHC related to allegedly improperly received Medi-Cal funds.

12. On information and belief, the DOJ made a written demand to CHC for payment on August 24, 2021.

13. On information and belief, on December 2, 2021, the DOJ made a presentation to CHC regarding its demand for payment and provided a copy of that presentation to CHC thereafter. CHC advised RSUI that the DOJ expressly forbade CHC from sharing the presentation with its insurers.

14. On January 14, 2022, the United States Attorney's Office for the Central District of California and the United States Department of Justice's Civil Division sent a letter to CHC stating that they were conducting a joint investigation regarding CHC's alleged violations of the civil False Claims Act, 31 U.S.C. §§ 3729–3733 (the "FCA"). A copy of the letter is attached to this complaint as **Exhibit B**.

15. The letter advised the government was investigating whether CHC improperly received Medi-Cal funds in violation of the FCA:

> The United States is investigating whether the Santa Barbara San Luis Obispo Regional Health Authority d/b/a CenCal Health ("CenCal") improperly reimbursed CHC for non-contract services regarding CenCal's Medi-Cal Adult Expansion population, and whether in so doing CHC knowingly presented or caused to be presented a false or fraudulent claim for payment or approval to the United States in violation of 31 U.S.C. § 3729(a)(1)(A); or knowingly made, used, or caused to be made or used, a false record or statement material to a false or fraudulent claim in violation of 31 U.S.C. § 3729(a)(1)(B); or knowingly and improperly avoided or decreased an obligation to pay money to the United States in violation of 31 U.S.C. § 3729(a)(1)(G); or conspired to commit a violation of 31 U.S.C. §§ 3729(a)(1)(A), 3729(a)(1)(B), and/or 3729(a)(1)(G), in violation of 31 U.S.C. § 3729(a)(1)(C).

16. On information and belief, the DOJ instituted a legal proceeding against CHC based on its FCA CLAIM, which is presently under seal.

## COVERAGE FOR THE FCA CLAIM IS LIMITED TO THE POLICY'S GOVERNMENT FUNDING DEFENSE EXPENSE COVERAGE

17. Subject to other terms and conditions, the POLICY covers Loss the Insured Organization is legally obligated to pay because of a Claim for a Wrongful Act that is first made against the Insured Organization during the Policy Period and timely reported.

18. However, assuming the FCA CLAIM qualifies as a Claim for a Wrongful Act and that it was first made during the Policy Period and timely reported, the FCA CLAIM does not implicate potentially covered Loss.

19. Under the terms of the POLICY's Government Funding Defense Expense Coverage cited above, Loss means damages, settlements, judgments and Defense Expenses, but Loss does "not include the return of funds which were received from any federal, state or local governmental agency."

20. The FCA CLAIM is based on potential violations of the FCA. Courts have repeatedly recognized the purposes of the FCA is to facilitate the return of funds received from the government by providing a mechanism for the government to recoup funds paid by it under false pretenses. *Vermont Agency of Natural Res. v. U.S. ex rel. Stevens*, 529 U.S. 765, 792 (2000) ("[T]he False Claims Act is used as.. the primary vehicle by the Government for recouping losses suffered through fraud.") (quoting H.R.Rep. No. 99–660, p. 18 (1986)); *U.S. ex rel. Bilotta v. Novartis Pharm. Corp.*, 50 F.Supp.3d 497, 508 (S.D.N.Y., 2014) ("The FCA facilitates restitution to the federal government when money is fraudulently taken from it.") (citation omitted); *U.S. ex rel. Taylor v. Gabelli*, No. 03 CIV 8762 (PAC), 2005 WL 2978921, at *12-13 (S.D.N.Y. Nov. 4, 2005) ("The legislative history [of the FCA] is replete with references to the remedial purpose of the Act and in particular to recoupment of monetary losses" and ("[Congressional] reports mention,

time and again, the desire to recoup Government losses resulting from outlays of funds in the typical false claims suits[.]"); *Mortgages, Inc. v. U.S. Dist. Court for Dist. of Nev. (Las Vegas)*, 934 F.2d 209, 213 (9th Cir. 1991) ("[T]he purpose of the damages provisions of the FCA is to deter future fraudulent claims, as well as recoup the government's losses due to fraud."); *United States v. McLeod*, 721 F.2d 282, 285 (9th Cir. 1983) (reasoning that defendant's "conversion of, and subsequent refusal to return, the funds resulted in the government's suffering a financial loss sufficient to invoke the provisions of the False Claims Act.") (emphasis added); *United States ex rel. Bryant v. Williams Bldg. Corp.*, 158 F.Supp.2d 1001, 1008 (D.S.D. 2001) (the "objectives of the FCA [are] to encourage private citizen involvement in exposing those types of fraud that might result in financial loss to the government, thereby ensuring the recoupment of such losses.") (emphasis added).

21. The FCA CLAIM seeks to recover funds which were received from a federal, state or local governmental agency. The government's January 14, 2022 letter explains the DOJ was investigating whether, "the Santa Barbara San Luis Obispo Regional Health Authority d/b/a CenCal Health ("CenCal") improperly reimbursed CHC for non-contract services regarding CenCal's Medi-Cal Adult Expansion population." RSUI has not been provided information in this matter regarding any alleged wrongful act by CHC other the allegedly improper receipt of government funds.

22. Although Loss does not include amounts potentially recoverable under the FCA, the POLICY's Government Funding Defense Expense Coverage provides that RSUI will pay certain Defense Expenses with respect to any Claim arising out of the return or request to return funds received from any federal, state or local governmental agency. Specifically, RSUI agreed to pay up to $1,000,000 on a 50-50% co-insurance basis with CHC, subject to a $1,000,000 Retention. Accordingly, RSUI's obligation with respect to the FCA CLAIM, if any, is limited to payment of Defense Expenses.

# FIRST CAUSE OF ACTION

## (Declaratory Relief Against All Defendants)

23. Plaintiff hereby incorporates Paragraphs 1 through 22 as though fully set forth herein.

24. An actual controversy has arisen and now exists between Plaintiff RSUI, on the one hand, and Defendants on the other hand, concerning their respective rights and obligations under the POLICY with respect to the FCA CLAIM.

25. Plaintiff contends its obligation is limited to payment of Defense Expenses under the POLICY's Government Funding Defense Expense Coverage and that any liability that CHC may have for the FCA CLAIM other than those Defense Expenses does not qualify as Loss under the POLICY and is not covered. On information and belief, Defendants dispute those contentions.

26. Plaintiff seeks a judicial determination of its rights and obligations with regard to coverage for the FCA ACTION, including but not limited to declarations that:

(a) CHC is entitled only to Defense Expense coverage for the FCA CLAIM pursuant to the POLICY's Government Funding Defense Expense Coverage;

(b) Coverage under the POLICY's Government Funding Defense Expense Coverage is subject to a $1 million self-insured Retention;

(c) Provided CHC satisfies the $1 million Retention by paying $1 million dollars in Defense Expenses, RSUI is obligated to pay only 50% of any excess Defense Expenses up to a total of $1,000,000; and

(d) the POLICY does not provide any indemnity coverage for the FCA CLAIM.

## PRAYER FOR RELIEF

Wherefore, Plaintiff RSUI prays for judgment against Defendants as follows:

1. For a judicial declaration that CHC is entitled only to Defense Expense coverage for the FCA CLAIM pursuant to the POLICY's Government Funding

Defense Expense Coverage;

2. For a judicial declaration that Coverage under the POLICY's Government Funding Defense Expense Coverage is subject to a $1 million self-insured Retention;

3. For a judicial declaration that provided CHC satisfies the $1 million Retention by paying $1 million dollars in Defense Expenses, RSUI is obligated to pay only 50% of any excess Defense Expenses up to a total of $1,000,000; and

4. For a judicial declaration that the POLICY does not provide any indemnity coverage for the FCA CLAIM;

5. For costs of suit; and

6. For such other and further relief that may be just.

DATED: December 7, 2022          MUSICK, PEELER & GARRETT LLP

By:    /s/
David A. Tartaglio
Chad A. Westfall
Attorneys for Plaintiff
RSUI INDEMNITY COMPANY
Email: d.tartaglio@musickpeeler.com
Email: c.westfall@musickpeeler.com